UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| **PAMELA VICKARYOUS**, an individual, | CIVIL ACTION |
| Plaintiffs, | |
| v. | Case No. 2:18-cv-315 |
| **THE SCHOOL BOARD OF COLLIER COUNTY**, a political subdivision of the State of Florida, | Judge: Unassigned |
| | Mag. Judge: Mac R. McCoy |
| Defendant. | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR TEMPORARY REINSTATEMENT UNDER F.S. §112.3187(9)(f) AND INCORPORATED MEMORANDUM OF LAW**

**NOW COMES** the Plaintiff, **PAMELA VICKARYOUS** ("Plaintiff" or "Vickaryous"), by and through undersigned counsel, and files Plaintiff's Reply in Support of Motion for Temporary Reinstatement Under F.S. §112.3187(9)(f) (PWA) and Incorporated Memorandum of Law, and states as follows:

**1. Nonrenewal is Clearly Adverse Employment Action Under the PWA.**

According to the Defendant, "Vickaryous is also not entitled to reinstatement, because she was not discharged." (Doc. 21, p. 8). This argument is unavailing for several reasons.

First, the Defendant's argument that there was no discharge is completely meritless just based on its own admissions. It can hardly be argued with a straight face that the Defendant's April 17, 2018 letter to Ms. Vickaryous was anything other than a termination letter. *See* Ex. 1. It specifically informed her that "[y]ou lost the respect and trust of staff at all levels," and then cited a smorgasbord of alleged policy violations before informing Ms. Vickaryous that those reasons

1

formed the basis for not renewing her contract. The Defendant even readily admits that it "composed this letter based upon the internal investigation." *See* Doc. 21-1, ¶24. So, by the Defendant's own admission, there can be no mistaking the fact that the Defendant did take adverse employment action and discharged Ms. Vickaryous.[1]

Second, the Defendant cannot reasonably quibble with what the term "discharge" means under the PWA. "Words of common usage, when employed in a statute, should be construed in their plain and ordinary sense." *Zuckerman v. Alter*, 615 So. 2d 661, 663 (Fla. 1993); *M.C. v. State*, 695 So. 2d 477, 483 (Fla. 3d DCA), review denied, 700 So. 2d 686 (Fla. 1997). And in choosing the statutory term "discharged," it is assumed that the Legislature knew its plain and ordinary meaning. *See Sheffield v. Davis*, 562 So. 2d 384 (Fla. 2d DCA 1990). The dictionary defines the term "discharge" as "to dismiss from employment: to terminate the employment of." Webster's Third New Int'l Dictionary 644 (1986); Black's Law Dictionary 463 (6th ed. 1990)("To dismiss from employment; to terminate employment of a person."). Applying the plain and ordinary meaning of the term "discharged" to the instant set of facts, there can be no reasonable debate that the Defendant dismissed Ms. Vickeryous from her employment, and thus discharged her within the meaning of the PWA.

Finally, the Defendant finds no support in any of the case law it relies upon for its curious position that a "nonrenewal" is different from a discharge under the PWA. Indeed, *Luster v. W. Palm Beach Hous. Auth.*, 801 So. 2d 122, 123 (Fla. 4th DCA 2001) and *Metro. Dade County v.*

---

[1] The fact that the Defendant kept Ms. Vickaryous on administrative leave through the end of the school year does nothing to change the fact that it discharged her. And as discussed herein, the Defendant's suggestion that a "nonrenewal" is not a "discharge" defies all common sense, particularly under these facts, and would require a departure from the principal that the PWA should be liberally interpreted to accomplish its intended purpose. *Martin County v. Edenfield*, 609 So. 2d 27, 29 (Fla. 1992); *Hutchison v. Prudential Ins. Co. of America, Inc.*, 645 So. 2d 1047 (Fla. 3d DCA 1994). Moreover, in its Response, the Defendant actually argues that "the alleged bus driver incident occurred two days 'after the [school board's] initiation of a personnel action against [Ms. Vickaryous]…'" (Doc. 21, p. 10). It would appear the Defendant is trying to have it both ways by saying on the one hand that no discharge occurred but then arguing it initiated a personnel action against Ms. Vickaryous.

*Milton*, 707 So.v2d 913, 914–15 (Fla. 3d DCA 1998) are immediately distinguishable because both are cases where the plaintiff was not terminated – they were internally transferred or demoted. More simply, they did not suffer job loss. And the Defendant's reliance on *Pritz v. Sch. Bd. of Hernando Cty.*, No. 5D17-2117, 2018 Fla. App. LEXIS 17137, at *3 (Dist. Ct. App. Nov. 30, 2018) fares no better and does <u>not</u> at all stand for the proposition the Defendant represents it does. Instead *Pritz* is much the same as *Luster* and *Milton* because in *Pritz*: (i) the plaintiff had been notified that he would be immediately transferred to a different position but with the same pay and title, (ii) the plaintiff then engaged in statutorily protected activity, (iii) then the defendant notified the plaintiff that he could remain in his transferred position, but at a substantially reduced salary, and (iv) when the plaintiff refused, he was informed his contract would not be renewed. Those facts are far more similar to *Luster* and *Milton* where there was a transfer and not a discharge, and thus no entitlement to temporary reinstatement under (9)(f). *See Utterback v. Sch. Bd. of Palm Beach Cty.*, 219 So. 3d 940 (Fla. Dist. Ct. App. 2017)(distinguishing a discharge from transfers and demotions, the former entitling an employee to temporary reinstatement). By contrast, Ms. Vickaryous was not offered a transfer, nor was she demoted – she was discharged – which was effectuated by the Defendant under the auspices of a "nonrenewal." And a nonrenewal or a discharge is a distinction without a difference because, either way, the Defendant cannot escape the fact that it involuntarily separated Ms. Vickaryous from her employment. And that fits squarely within the definition of a discharge.[2]

### 2. Ms. Vickaryous Engaged in Statutorily Protected Activity.

As a federal court applying state law, the District Court is "bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court

---

[2] This is particularly so when coupled with the fact that the Defendant placed Ms. Vickaryous on administrative leave in January 2018 before she was informed of her discharge in April 2018.

3

would decide the issue otherwise." *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008 (11th Cir. Mar. 5, 2014) (internal quotation marks omitted) (*quoting Provau v. State Farm Mut. Auto. Ins. Co.*, 772 F.2d 817, 820 (11th Cir. 1985)); *see also Doyle v. Volkswagenwerk Aktiengel-Ellschaft*, 81 F.3d 139, 142-43 (11th Cir. 1996). Furthermore, the Supreme Court of Florida has held that "decisions of district courts of appeal represent the law of Florida unless and until they are overruled by this Court." *Pardo v. State*, 596 So. 2d 665, 666 (Fla. 1992) (citation omitted). Consequently, *Rustowicz v. N. Broward Hosp. Dist.*, 174 So. 3d 414 (Fla. Dist. Ct. App. 2015) and *Igwe v. City of Miami*, 208 So. 3d 150 (Fla. Dist. Ct. App. 2016) are fatal to the Defendant's suggestion that there can be no protected activity if the employee is required to make such reports. Both cases are binding precedent.

In *Rustowicz*, the plaintiff was an audit associate employed by a governmental entity. As part of her job duties, Rustowicz uncovered a $35,000 relocation payment and other questionable expense items by the CEO. As an audit associate, she then reported the same to her director, who instructed her "to investigate the expenditures further and to determine if there were additional irregularities." *Rustowicz,* at 417. Undeniably, investigating and determining if there were additional irregularities were part of her job functions. Nevertheless, Florida's 4th DCA squarely held that Rustowicz engaged in statutorily protected activity under the PWA, notwithstanding the fact that conducting the investigation and making reports were part of her job duties. *Id*., at 425.

And if *Rustowicz* was not enough, the decision of Florida's 3rd DCA in *Igwe v. City of Miami,* 208 So. 3d 150 (Fla. Dist. Ct. App. 2016) completely closes the door on the Defendant's argument. In *Igwe*, the defendant made the argument that Igwe's disclosures consisted of things that the job obligated him to report, and that his cooperation with outside agencies like the SEC and the FBI were also a part of his job. But the 3rd DCA flatly rejected that argument and held: "the trial court

4

erred in its determination that Igwe was precluded from whistle-blower protection on the ground that he reported the City's misconduct while carrying out his duties as the Independent Auditor General ("IAG") for the City." *Igwe,* at 151.³ The 3rd DCA made very clear that the PWA covers persons just like Ms. Vickaryous because "[t]he phrase 'any person' clearly encompasses those who make disclosures because it is their job to do so, and those who make disclosures even though they have no employment obligation to do so." *Id.,* at 155. As the 3rd DCA further explained:

> Second, the Florida Supreme Court has unequivocally stated that the Act is a remedial statute, and should be liberally construed in favor of granting access to protection from retaliatory actions. *Irven v. Dep't of Health & Rehabilitative Servs.,* 790 So. 2d 403, 406 (Fla. 2001) (stating that "[section 112.3187(2)] could not have been more broadly worded"); *Martin Cnty. v. Edenfield,* 609 So. 2d 27, 29 (Fla. 1992); *Hutchison v. Prudential Ins. Co. of Am.,* 645 So. 2d 1047, 1049 (Fla. 3d DCA 1994). Contrary to these authorities, the City's interpretation of "on their own initiative" as a prerequisite rather than as an option, would be a very strict and narrow reading of the Act, which would foreclose the possibility of whistle-blower protection for a large segment of the population, and be in contravention of section 112.3187(2), which affords statutory protection against retaliatory action against "any person" who properly discloses the improper conduct to the appropriate agency.
>
> For example, the City's interpretation would foreclose the possibility of whistle-blower protection for those whose job it is, in whole or in part, to manage, report, or supervise governmental misconduct. Consider a manager, a foreman, or an administrator of a public or governmental agency who is tasked with supervising the employees of that entity. If such a person reports to his boss that the governmental entity is placing its employees at a substantial risk of injury due to the failure to provide these employees with the required safety equipment, then under the City's interpretation of "on their own initiative," he would not be protected by the Act if he was fired in retaliation for reporting the misconduct. This interpretation would be unreasonable and contrary to the express intent of the Legislature.
>
> In summary, the City's interpretation of the statute runs contrary to the plain meaning of the language contained in the Act and the express intent of the Legislature to protect "any person" who discloses such misconduct. It also contradicts the requirement that the remedial statute be liberally construed to favor

---

³ The *Igwe* case is particularly instructive because (i) the instant Defendant attempts to advance the same rejected argument, and (ii) it deals with the employer declining to renew the employee's contract. While resolution of *Igwe* did not turn on the issue of "discharge," in that case there was no issue raised by the defendant challenging whether a nonrenewal is somehow not a discharge within the meaning of the PWA.

> access to the statutory remedy, and significantly limits the number of people who may seek whistle-blower protection after disclosing governmental misconduct. We therefore reject the City's interpretation and hold that section 112.3187(7) protects those who make disclosures regarding "improper use of governmental office, gross waste of funds, or any other abuse or gross neglect of duty on the part of an agency, public officer, or employee," even if they do so in the course of carrying out their job duties.

*Igwe*, at 155-56.

The holding in *Igwe* could not be more on point. Thus, under the PWA, the employee's job duties are irrelevant when determining if there is statutorily protected activity. Florida's appellate courts have considered and rejected the very argument the Defendant tries to put forth here. But, *Rustowicz* and *Igwe* control. Thus, it is clear that Ms. Vickaryous engaged in statutorily protected activity when she reported the potential sexual abuse of a child by Defendant's employee who was not under Ms. Vickaryous' direct control, regardless of whether her job duties required such a report.

And as for the issue of the Defendant not having a deputy in Ms. Vickaryous' school, it is of no moment whether or not the Sheriff's Office had staffing ability.[4] Instead, what matters is that Ms. Vickeryous made the complaints to the Defendant about the safety risks associated with not having a deputy. Ms. Vickaryous' signed, written complaints regarding the lack of a deputy on campus fits within the definition of a suspected act of a gross neglect of duty (i.e. to keep students and staff safe) by the Defendant. Thus, the content of Ms. Vickaryous' disclosures fits squarely within the protection of the PWA.

---

[4] The Court should note that much of the supposed support for the Defendant's argument on this issue either emanates from unsworn statements, inadmissible hearsay, arguments of counsel or some combination thereof.

### 3. Temporary Reinstatement Under the PWA Does <u>Not</u> Require a *Prima Facie* Case.

The Defendant's Response conflates inapposite legal elements[5] with the separate and distinct remedy of temporary reinstatement under the PWA.[6] Nowhere in the text of (9)(f) or in the case law interpreting it is there any suggestion that the elements of a *prima facie* case must be proven, or that an affirmative defense can thwart the mandatory relief of temporary reinstatement. Indeed, (9)(f) makes no mention of causal connections or affirmative defenses,[7] and the courts that have had occasion to delve into this issue all agree that in order to qualify for the remedy of temporary reinstatement under Florida's PWA, Ms. Vickaryous must show only that (1) prior to termination she made a disclosure protected by the statute; (2) she was discharged; and (3) the disclosure was not made in bad faith or for a wrongful purpose, and did not occur after an agency's personnel action." *State of Florida Dep't of Transp. v. Florida Com'n on Human Relations*, 842 So.2d 253, 255 (1st DCA 2003) (*citing Lindamood v. Office of State Attorney, Ninth Judicial Circuit of Florida*, 731 So. 2d 829, 831 (5th DCA 1999)). This is <u>all</u> that is required for temporary reinstatement under the PWA. *Marchetti v. Sch. Bd. of Broward Cty.*, 117 So. 3d 811, 814 (Fla. Dist. Ct. App. 2013)(*quoting Lindamood,* at 833 ("[t]he relief spelled out in the statute mandates

---

[5] The Defendant attempts to shoehorn FMLA case law into this PWA case. (*Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007); *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791 (11th Cir. 2000); *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 121 S. Ct. 1508 (2001); *Higdon v. Jackson*, 393 F.3d 1211, 1216 (11th Cir. 2004)(ADA)).

[6] "Any proceedings on the underlying whistle-blower's complaint will be separate and distinct from the reinstatement case and will be conducted in the manner provided by section 112.31895(3) and (4), Florida Statutes." *State, Dep't of Transp. v. Fla. Comm'n on Human Relations*, 842 So. 2d 253, 255 (Fla. 1st DCA 2003); *see also Competelli v. City of Belleair Bluffs*, 113 So. 3d 92, 94 (Fla. Dist. Ct. App. 2d Dist. 2013).

[7] Of note is that F.S. §112.3187(10) specifically contemplates affirmative defenses. Thus, the Legislature's inclusion of such a section elsewhere in the statute, but not in (9)(f), is further confirmation that temporary reinstatement is mandatory where the plaintiff meets the requisite three elements, irrespective of any affirmative defenses. More simply stated, the Legislature could have required consideration of affirmative defenses in (9)(f), but it chose not to. "When the legislature has used a term, as it has here, in one section of the statute but omits it in another section of the same statute, we will not imply it where it has been excluded." *Leisure Resorts, Inc. v. Frank J. Rooney, Inc.*, 654 So. 2d 911, 914 (Fla. 1995); *Beach v. Great W. Bank*, 692 So. 2d 146, 152 (Fla), cert. granted on other grounds, 118 S. Ct. 294 (1997); *see also Moonlit Waters Apartments, Inc.*, 666 So. 2d at 900; *Montes de Oca v. Orkin Exterminating Co.*, 692 So. 2d 257 (Fla. 3d DCA), review denied, 699 So. 2d 1374 (Fla. 1997); *National Airlines, Inc. v. Division of Employment Sec. of Fla. Dept. of Commerce*, 379 So. 2d 1033 (Fla. 3d DCA 1980). Thus, consideration of affirmative defenses cannot be implied into subsection (9)(f). *See Holly,* 450 So. 2d at 219.

temporary reinstatement" where the plaintiff meets all of the statutory requirements.")).[8] Consequently, the Defendant's attacks on causal connection grounds and its attempt to plead and prove affirmative defenses are of no moment for the purposes of this temporary reinstatement motion.

4. **Defendant Proffers Not Even a Scintilla of Evidence to Suggest It had Initiated Any Personnel Action Against Ms. Vickaryous Prior to Her Engaging in Statutorily Protected Activity.**

In order for the Defendant to escape temporary reinstatement under (9)(f), its "personnel action" (i) had to predate the statutorily protected activity, and (ii) had to include "documentation of the employee's violation of a disciplinary standard or performance deficiency." Both are missing here.

Contrary to the Defendant's suggestion, when Ms. Vickaryous engaged in statutorily protected activity on December 15, 2017, the Defendant had not even contemplated any personnel action, let alone actually initiated the same prior to that date. To be sure, the Defendant's own documents admit that "[o]n January 22, 2018, the HR Department opened an internal investigation into the allegation you created a hostile work environment…" *See* Ex. 1; *see also* Doc. 21-1, ¶7. This is, of course, weeks after Ms. Vickaryous engaged in statutorily protected activity. And only then did the Defendant include documentation of Ms. Vickaryous' alleged violation of a disciplinary standard or performance deficiency. *See* F.S. §112.3187(9)(f). In sum, because Ms. Vickaryous' statutorily protected activity occurred prior to the Defendant's initiation of personnel action as defined by (9)(f), she is entitled to temporary reinstatement under the PWA.

---

[8] Florida's 4th DCA also made clear in *Marchetti* that a (9)(f) temporary reinstatement analysis should not be conflated with an injunctive relief standard under (9)(e): "To qualify for relief under subsection 112.3187(9)(f), a plaintiff is required only to make the showing required under the statute and not under Rule 1.610." *Marchetti*, at 814.

WHEREFORE the Plaintiff respectfully requests the Court GRANT the Plaintiff's Motion for Temporary Reinstatement and award all other relief deemed just.

                              Respectfully submitted,

Dated: January 23, 2019        **s/ Benjamin H. Yormak**
                                     Benjamin H. Yormak
                                     Florida Bar Number 71272
                                     Trial Counsel for Plaintiff
                                     Yormak Employment & Disability Law
                                     9990 Coconut Road
                                     Bonita Springs, Florida 34135
                                     Telephone: (239) 985-9691
                                     Fax: (239) 288-2534
                                     Email: byormak@yormaklaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 23, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: None.

                                     **s/ Benjamin H. Yormak**
                                     Benjamin H. Yormak