UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| **PAMELA VICKARYOUS**, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>**THE SCHOOL BOARD OF COLLIER COUNTY**, a political subdivision of the State of Florida,<br><br>Defendant. | CIVIL ACTION<br><br>Case No. 2:18-cv-315<br><br>Judge: Thomas P. Barber<br><br>Mag. Judge: Mac R. McCoy |

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

**NOW COMES** the Plaintiff, **PAMELA VICKARYOUS** ("Plaintiff" or "Vickaryous"), by and through undersigned counsel, and files Plaintiff's Motion for Summary Judgment and Incorporated Memorandum of Law, and in support, states as follows:

### INTRODUCTION

If you're an employee of the Collier County School Board, be warned: if you speak or try to defend yourself, you'll be fired. And then you'll be banned from all public events even you're just attending as a parent of your three daughters. That's the edict the Collier County School Board issued to the Plaintiff, Pamela Vickaryous, who enjoyed more than twenty years of a distinguished career in public education until the Defendant abruptly terminated her employment as a middle school principal after she engaged in activity protected by the First Amendment and Florida's Public Whistleblower Act (PWA). Her then-impending wrongful termination being bad enough, the Defendant nevertheless added salt to the open wound by barring her from lodging any

1

meaningful defense and barring her from communicating with anyone, including exculpatory witnesses or even counsel. Her career in public education effectively kiboshed by the Defendant, Ms. Vickaryous brought this action under the First Amendment and PWA. This Court ordered her temporarily reinstated under §(9)(f) of the PWA on February 27, 2019 (Doc. 28), but the Defendant terminated her anyway in September 2019.

This Motion centers on the Defendant's retaliatory, vindictive and unconstitutional adverse actions, and she is entitled to summary judgment on three discrete First Amendment claims. **First**, the Defendant violated Ms. Vickaryous's First Amendment rights when it barred her from speaking with any employee of the Defendant at all – including former employees or even legal counsel. And the Defendant made the consequences of violating such an edict quite clear: disciplinary action that can include termination. Thus, the Defendant very clearly violated her First Amendment right of expressive association. **Second**, the Defendant violated Ms. Vickaryous's First Amendment rights when it barred her from attending her daughters' interscholastic soccer games. The Defendant's ban of Ms. Vickaryous from her daughters' soccer games was neither viewpoint-neutral nor reasonable. Ms. Vickaryous presented no threat of disruption or of harm to anyone — nor even any specter of intimidation. The Defendant's motive in banning Ms. Vickaryous from the sports fields (a limited public forum) was to monitor her and to punish her, and was certainly not viewpoint neutral in the least. **Third**, Ms. Vickaryous exercised her free speech rights when she spoke at a private function regarding school safety and the Defendant's lack of school resource officers. Her comments were not made within the scope of her job duties and did not interfere with the Defendant's operations. The Defendant has confirmed – *in writing and in sworn testimony* – that such speech was a motivating factor in her termination. For these

2

reasons, and those articulated in more detail *infra*, Ms. Vickaryous is entitled to summary judgment.

## MEMORANDUM OF LAW[1]

**A. Defendant Has Violated Plaintiff's First Amendment Freedom of Association and Freedom of Speech Rights By Banning Her From All Communication and Banning Her From Attending Her Minor Daughters' Soccer Games.**

    **a. Legal Standard & Expressive Association Generally.**

A right of free association is implicit in the First Amendment. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). There are two types of protected association: association involving "intimate human relationships" and association to engage "in those activities protected by the First Amendment." *Id*. at 617-18. Intimate association concerns those relationships inherent to a family structure. *See McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994) (stating that "[a]t a minimum, the right of intimate association encompasses the personal relationships that attend the creation and sustenance of a family."). Freedom of expressive association, on the other hand, is "a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties." *Roberts,* 468 U.S. at 618. And "[i]n the Eleventh Circuit, 'public concern' is not part of the analysis of a freedom of association claim, regardless of whether that claim is an expressive association claim or an intimate association claim." *Bouldin v. Troy City Board of Ed.*, No. 2:13-cv-898-JA-GMB, Doc. 70, P.19, 2016 U.S. Dist. LEXIS 192756 (M.D. Ala. July 19, 2016); *D'Angelo v. Sch. Bd. of Polk Cty., Fla.*, 497 F.3d 1203, 1212 (11th Cir. 2007) ("We have long held that, unlike speech or petitions by public employees, associational

---

[1]     The Court is well aware of the summary judgment standard, which bears no repeating here.

activity by public employees need not be on matters of public concern to be protected under the First Amendment."); *Hatcher v. Bd. of Pub. Educ. & Orphanage*, 809 F.2d 1546, 1558 (11th Cir. 1987); *Cook v. Gwinnett County Sch. Dist.*, 414 F.3d 1313, 1320 (11th Cir. 2005) (*citing Hatcher*).

Even among First Amendment claims, gag orders like the Defendant issues warrant a most rigorous form of review because they rest at the intersection of two disfavored forms of expressive limitations: prior restraints and content-based restrictions. Like all "court orders that actually forbid speech activities," *Alexander v. United States*, 509 U.S. 544, 550 (1993), gag orders are prior restraints. Prior restraints bear "a heavy presumption against [their] constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). Prior restraints upend core First Amendment principles because "a free society prefers to punish the few who abuse rights of speech after they break the law [rather] than to throttle them and all others beforehand." *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975).

Similarly, gag orders are presumptively unconstitutional because they are content based. *Nat'l Inst. of Family and Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018) (presumption against content-based restraints). Content-based restrictions target "particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015). Gag orders inherently target speech relating to pending litigation, a topic right at the core of public and community life. But the law is crystal clear that the "government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002) (internal quotation marks omitted). In light of these twin presumptions, gag orders must survive strict scrutiny. *Reed*, 135 S. Ct. at 2226 (strict scrutiny for content-based restrictions). So when the government defends a restriction on speech "as a means to . . . prevent anticipated harms, it must . . . . demonstrate that the recited harms are real, not

4

merely conjectural, and that the [restriction] will in fact alleviate these harms in a direct and material way." *United States v. Nat'l Treasury Emps. Union,* 513 U.S. 454, 475 (1995) (internal quotation mark omitted); *see also Harman v. City of New York,* 140 F.3d 111, 122 (2d Cir. 1998) ("Where the predictions of harm are proscriptive, the government cannot rely on assertions, but must show a basis in fact for its concerns.").

To recover against a municipality, a plaintiff must show: "(1) that [his or her] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Bankshot Billiards, Inc. v. City of Ocala,* 634 F.3d 1340, 1349 (11th Cir. 2011). As the Supreme Court has stated, "it is an essential prerequisite to the validity of an investigation which intrudes into the area of constitutionally protected rights of speech, press, association and petition that the State convincingly show a substantial relation between the information sought and a subject of overriding and compelling state interest." *Gibson v. Florida Legislative Investigation Committee,* 372 U.S. 539 (1963). In cases presenting First Amendment challenges, the courts "must be less deferential to state interests. Any prior restraint on expression comes to the court with a presumption of unconstitutionality." *Doe v. Gonzalez,* 723 F. Supp. 690, 693 (S.D. Fla. 1988) (*citing First Amendment Coalition v. Judicial Inquiry and Review,* 784 F.2d 467, 477 (3d Cir. 1986).

### b. Defendant Violated Plaintiff's First Amendment Freedom of Expressive Association Rights.

First, Ms. Vickaryous has shown a constitutional violation of her right of expressive association because without question the Defendant barred her from speaking with *anyone* regarding the allegations made against her. To be sure, the Defendant's Agreement barred her from speaking with any employee of the Defendant at all – including former employees or even legal

5

counsel. It also barred her from disclosing to anyone "any information regarding [Plaintiff's] participation in this investigation, nor divulge any discussions [Plaintiff] had with the investigator to any other school district employee, both current and former, nor to any external party, except as required by law." That's as broad and unconstitutional as it gets.

The Defendant made the consequences of violating such an edict quite clear: disciplinary action that can include termination. The record is clear that when Plaintiff's husband contacted potential witnesses to aid in her defense, the Defendant immediately issued discipline to Plaintiff and *did* threaten termination. According to Ms. Wenrich, by trying to gather information to lodge a defense, Ms. Vickaryous (through her husband) "was impeding upon the investigation." It simply did not matter that he was just looking to get information that could defend his wife from the allegations that were being made against her.[2] The Defendant plainly barred Ms. Vickaryous from engaging in any speech that could exonerate her – or any speech at all for that matter – for the simple reason that the overly restrictive and intrusive Defendant "wants to know where [Plaintiff is] and who [she's] dealing with." This very clearly violated her First Amendment right of expressive association.

An analysis of the governmental interests said to be advanced by the Defendant's gag order clearly indicates that such interests are insufficient to justify the restrictions on First Amendment freedoms. The interests asserted by Defendant herein are no more compelling than those asserted in *Landmark Commc'ns v. Virginia*, 435 U.S. 829 (1978). The test requires that the danger be "clear and present" and the Defendant's gag order falls far short of that requirement. Moreover, much of the risk can be eliminated through careful internal procedures to protect the confidentiality

---

[2] It would be unimaginable for a criminal defendant to ever be barred from gathering exculpatory evidence or from communicating with favorable witnesses. But here, the Defendant prohibited Ms. Vickaryous from speaking to anyone that could possibly exonerate her for the sole reason of "wanting a clean investigation." This alone demonstrates a clear First Amendment violation, in addition to demonstrating Defendant's male fides toward Ms. Vickaryous.

of the investigation that does not gag Ms. Vickaryous. As in the *Landmark* case, the "type of 'danger' evidenced by the record is precisely one of the types of activity envisioned by the Founders in presenting the First Amendment for ratification." 435 U.S. at 845 (*citing Wood v. Georgia*, 370 U.S. 375, 388 (1962)). And in the context of government investigations, other federal courts have found similar confidentiality provisions unconstitutional on First Amendment grounds like the one at issue here. See *Lind v. Grimmer*, 30 F.3d 1115, 1118 (9th Cir. 1994) (holding unconstitutional the confidentiality provision applicable to investigations conducted by Hawaii's campaign spending commission, and finding "the speech it restricts, speech about political processes and governmental investigations of wrongdoing by public officials, falls near to the core of the First Amendment."); *Providence Journal Co. v. Newton*, 723 F. Supp. 846 (D.R.I. 1989) (invalidating Rhode Island Ethics Commission confidentiality provision); *Doe v. Gonzalez*, 723 F. Supp. 690, 693 (S.D. Fla. 1988) (invalidating Florida State Ethics Commission confidentiality provision, and finding "[a]ny prior restraint on expression comes to the court with a presumption of unconstitutionality.").[3] Here, the type of speech prohibited by the Defendant should not only be tolerated, but encouraged. And that's because allowing a public employee to speak to others in pursuit of their own defense furthers the most compelling of state interests – ascertaining the truth as to the allegations levied. The *Landmark* court reaffirmed the "well established principle" that "[a]n enforced silence, however limited, solely in the name of preserving the dignity [of criticizing judges], would probably engender resentment, suspicion, and contempt much more than it would enhance respect."" *Landmark,* 435 U.S. at 842. If the Virginia statute that prohibited disclosure of

---

[3] When the government seeks to justify legislation which substantially limits First Amendment rights, it "must produce more than a few conclusory affidavits . . . which primarily contain unsubstantiated opinions and allegations." *City of Watseka v. Illinois Public Action Council,* 796 F.2d 1547 (7th Cir. 1986). In addition, although the Court in *Landmark* determined that "the confidentiality requirement can be said to facilitate the work of the commissions in several practical respects," the Court concluded the governmental interests asserted were insufficient to justify the encroachments on freedom of speech and of the press.

information concerning proceedings before the state Judicial Inquiry and Review Commission didn't pass muster in *Landmark*, the Defendant's blanket prohibition on Ms. Vickaryous contacting anyone in her own defense cannot fare any better.

Also, the record shows the existence of the second and third elements to establish liability. Public employers are not vicariously liable for §1983 violations by public employees. *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658, 691. Instead, a public employer is subject to §1983 liability when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §1983." *Id.* at 694. A plaintiff can establish a municipal custom by identifying "the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (*quoting Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). Such a practice is "deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991). Here, the record plainly reflects that the Defendant has a longstanding custom of violating the expressive rights of its employees, like Ms. Vickaryous, as the Confidentiality Agreement it forced Ms. Vickaryous to sign is a standard form. To be sure, Ms. Wenrich confirmed the policy is standard and has been ratified by the Superintendent.

But even if that longstanding policy was absent, "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of*

*Cincinnati,* 475 U.S. 469, 480, 106 S. Ct. 1292, 1298, 89 L. Ed. 2d 452 (1986). For the public employer to be liable in such a case, the decisionmaker must possess "final authority to establish municipal policy with respect to the action ordered." *Id*. at 481. To determine whether an official is a final policymaker, the Court must consult state law. *Id*. at 483. An official lacks final policymaking authority when his "decisions are subject to meaningful administrative review." *Scala v. City of Winter Park*, 116 F.3d 1396, 1401 (11th Cir. 1997). The Superintendent plainly possesses the requisite policymaking authority and is a final policy maker as a matter of law.

The Supreme Court has recognized that "[i]t is rare that a regulation restricting speech because of its content will ever be permissible." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 818 (2000). Content-based statutes, therefore, "are presumptively invalid." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992). Based on the foregoing, the Defendant's restriction of Plaintiff's First Amendment associational rights – and specifically the right to discuss the investigation with others – is an obvious content-based, unconstitutional action. Consequently, Ms. Vickaryous is entitled to summary judgment on that claim.

### c. The Defendant Violated Ms. Vickaryous' Freedom of Assembly Rights.

The Defendant also restricted Ms. Vickaryous's ability to attend her daughters' public sporting events by way of the "no trespass order." This is unconstitutional. The First Amendment prohibits the government from "abridging the freedom of speech, or of the press," and guarantees "the right of the people peaceably to assemble." U.S. Const. amend. I. "The right of peaceable assembly is a right cognate to those of free speech and free press and is equally fundamental." *De Jonge v. Oregon*, 299 U.S. 353, 364 (1937). "[O]f all constitutional rights, the freedoms of speech and of assembly are the most perishable, yet the most vital to the preservation of American democracy." *Wolff v. Selective Service Local Board No. 16*, 372 F.2d 817, 822 (2d Cir. 1967); *see, e.g., Thomas*

9

*v. Collins,* 323 U.S. 516, 530 (1945) ("It was not by accident or coincidence that the rights to freedom in speech and press were coupled in a single guaranty with the rights of the people peaceably to assemble and to petition for redress of grievances. All these, though not identical, are inseparable.").

"[G]overnment officials may stop or disperse public demonstrations or protests where 'clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears.'" *Papineau v. Parmley,* 465 F.3d 46, 56-57 (2d Cir. 2006) (*quoting Cantwell v. Connecticut,* 310 U.S. 296, 308 (1940)). However, "[f]ear of serious injury cannot alone justify suppression of free speech and assembly. . . . To justify suppression of free speech there must be reasonable ground to fear that serious evil will result if free speech is practiced." *United States v. National Treasury Employees Union,* 513 U.S. 454, 475 (1995) (internal quotation marks omitted). "The First and Fourteenth Amendments do not permit a State to make criminal the exercise of the right of assembly simply because its exercise may be annoying to some people." *Coates v. City of Cincinnati,* 402 U.S. 611, 615 (1971) (internal quotation marks omitted).

Where there is no clear and present danger, "speech restrictions imposed on [persons on] government-owned property are analyzed under a 'forum-based' approach that divides government property into three [principal] categories — the traditional public forum, the designated public forum, and the nonpublic forum," *Byrne v. Rutledge,* 623 F.3d 46, 53 (2d Cir. 2010), along with "a subset of the designated public forum," referred to as the "limited public forum," *id.* at 54 n.8 (internal quotation marks omitted); *see, e.g., Peck ex rel. Peck v. Baldwinsville Central School District,* 426 F.3d 617, 625-26 (2d Cir. 2005), *cert. denied,* 547 U.S. 1097 (2006). "[T]he level of judicial scrutiny that must be applied to state actions inhibiting speech varies with the nature of

the forum in which the speech occurs," *Peck,* 426 F.3d at 625, and the same analytical framework applies whether the First Amendment right being exercised is speech, as in *Peck*, or other "expressive activity" such as assembly, *see, e.g., Travis v. Owego-Apalachin School District,* 927 F.2d 688, 692 (2d Cir. 1991).

Traditional public forums include areas such as "streets[ and] parks . . . 'which have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly'"; as to a traditional public forum, the state may not enact "'[c]ontent-based restrictions'" unless "'they are necessary to serve a compelling state interest.'" *Peck,* 426 F.3d at 625-26. It has long been established that parents have a liberty interest in directing their children's education without unreasonable interference by the states. *See, e.g., Meyer v. Nebraska,* 262 U.S. 390, 400 (1923); *Pierce v. Society of Sisters,* 268 U.S. 510, 518-19 (1925); *see also Wisconsin v. Yoder,* 406 U.S. 205, 232-33 (1972). But these principles have been completely ignored by the Defendant. The Supreme Court has made very clear:

> In the context of the "special characteristics of the school environment," . . . the government [has the power] to prohibit . . . . actions which "materially and substantially disrupt the work and discipline of the school." . . . . Associational activities need not be tolerated where they infringe reasonable campus rules, interrupt classes, or substantially interfere with the opportunity of other students to obtain an education.

*Healy v. James,* 408 U.S. 169, 189 (1972) (*quoting Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 513 (1969) (footnote omitted)). And thus, freedom of assembly may be reasonably restricted but under very limited circumstances:

> [N]o mandate in our Constitution leaves States and governmental units powerless to . . . protect the public from the kind of boisterous and threatening conduct that disturbs the tranquility of . . . . buildings that require peace and quiet to carry out their functions, such as courts, libraries, schools, and hospitals.

*Carey v. Brown,* 447 U.S. 455, 470-71 (1980) (internal quotation marks omitted). Thus, a

11

public school has "the authority . . . and responsibility for assuring that parents and third parties conduct themselves appropriately while on school property" and that they do not engage in disruptive or "threatening conduct that disturbs the tranquility of schools." *Lovern v. Edwards*, 190 F.3d 648, 655 (4th Cir. 1999).

But this record is completely devoid of any remote suggestion that Ms. Vickaryous posed such a threat. Moreover, the school invites the attendance of members of the public to interscholastic sporting events. And although the Defendant may include schools as an example of institutions for whose benefit speech and assembly restrictions may permissibly be imposed because their operations require tranquility,[4] courts, libraries, and hospitals, unlike schools, do not normally stage events at which the audience is encouraged not to be quiet but instead to engage in raucous and sustained noise. Peace, quiet, and tranquility are not characteristics of, or normally associated with, sports contests.

With respect to interschool soccer games, the sports fields during such games are at most a limited public forum. While the invitation to parents and other spectators to attend soccer games would not constitute an invitation to anyone to disrupt the game or intermissions with speeches about his or her views on school policy generally, or political issues, or other subjects not related to the sporting event, persons attending the game are expected to engage in expressive activity, chanting and cheering for whichever team they favor. Indeed, they are encouraged to do so; many schools even have at the games groups of students whose function is to lead the audience in boisterous expressions of encouragement and partisanship – they're called cheerleaders.

So, unless there is a clear and present danger of disruptions such as disorder, riot, obstruction of the event, or immediate threat to public safety, the school may not regulate access to its sports

---

[4] I.e. "courts, libraries, schools, and hospitals." *See* 447 U.S. at 471 (internal quotation marks omitted).

field when it is being used as a limited public forum unless its restrictions are reasonable and viewpoint-neutral. The Defendant's ban of Ms. Vickaryous from her daughters' soccer games was neither viewpoint-neutral nor reasonable. Ms. Vickaryous presented no threat of disruption or of harm to anyone — nor even any specter of intimidation, and that the Defendant's motive in banning Ms. Vickaryous from the sports fields limited public forum was to monitor her or to punish her, neither of which is viewpoint neutral in the least. The right not to be excluded, based on viewpoint differences or because of possible annoyance, from sports events to which the public was invited was clearly established First Amendment law. As a result, Ms. Vickaryous is entitled to summary judgment on this claim.

### B. Defendant Has Violated Plaintiff's First Amendment Free Speech Rights.

#### a. First Amendment Free Speech Claims Generally.

Time and time again, the Supreme Court has reiterated that "[s]peech by citizens on public concerns lies at the heart of the First Amendment, which 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Lane v. Franks*, 573 U.S. 228, 235-35 (2014) (*quoting Roth v. United States*, 354 U.S. 476, 484 (1957)). And "[t]his remains true when speech concerns information related to or learned through public employment." *Id.* For it is well established that the acceptance of public employment does not require the employee to relinquish their constitutional rights, especially those afforded under the First Amendment. *Id.*

But a public employee's right to share information is not absolute. Instead, the Supreme Court has "acknowledged the government's countervailing interest in controlling the operation of its workplaces" because "[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the

efficient provision of public services." *Lane*, 573 U.S. at 235-35. Consequently, "[t]he problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563, 568 (1968).

### b. The *Pickering* Analysis.

First Amendment claims such as this are governed by a four-step analysis. *Moss v. City of Pembroke Pines*, 782 F.3d 613, 617 (11th Cir. 2015) (*citing Carter v. City of Melbourne, Fla.*, 731 F.3d 1161, 1168 (11th Cir. 2013)). First, the Court considers "whether Plaintiff's speech was made as a citizen and whether it implicated 'a matter of public concern.'" *Id*. at 618 (*citing Rankin v. McPherson*, 483 U.S. 378, 384 (1987)). Second, the Court weighs the "Plaintiff's First Amendment interest against the City's interest in regulating his speech to promote 'the efficiency of the public services it performs through its employees.'" *Id*. (*quoting Pickering*, 391 U.S. at 568). The first two steps are "questions of law that are decided by the Court." *Id*. Third, "if the public employee prevails on the balancing test, the fact-finder determines whether the employee's speech played a substantial part in the government's decision to demote or discharge the employee." *Carter v. City of Melborne, Fla.*, 731 F.3d 1161, 1168 (11th Cir. 2013) (internal citations omitted). Fourth, if the employee prevails, "the state must prove by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct." *Id.*

> i. **Plaintiff's Comments at a Private Function Regarding School Safety and the Lack of School Resource Officers Were Made As A Private Citizen On Matters of Public Concern.**

Determining whether an employee spoke as a citizen turns on whether the speech "owes its existence to a public employee's professional responsibilities." *Garcetti v. Ceballos*, 547 U.S. 410,

14

421-22 (2006). The phrase "must be read narrowly to encompass speech that an employee made in accordance with or in furtherance of the ordinary responsibilities of her employment, not merely speech that concerns the ordinary responsibilities of her employment." *Alves v. Bd. of Regents of the Univ. Sys. of Ga.*, 804 F.3d 1149, 1162 (11th Cir. 2015). "The critical question... is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.* Factors such as "the employee's job description, whether the speech occurred at the workplace, and whether the speech concerned the subject matter of the employee's job" may all be considered. *Id*. at 1161.

It is undisputed that Ms. Vickaryous's remarks at a private function regarding school safety and the Defendant's lack of school resource officers were not made within the scope of her job duties. Indeed, the Defendant did not assign her to attend the function as its representative. Moreover, Ms. Vickaryous was on administrative leave at the time of the private function and it was attended by Ms. Vickaryous on her personal time. Nowhere in Ms. Vickaryous's job description is there any requirement for her to attend such a function and speak the words she spoke – indeed, the words were critical of the Defendant's mishandling of an issue that affects the safety of children. And while Ms. Vickaryous's knowledge of the school safety issue caused by the lack of school resource officers was learned through her position, that is of no moment because the proper focus "is whether the speech at issue is itself ordinarily within the scope of an employee's duties." *Fernandez v. Sch. Bd. of Miami-Dade Cty*, 898 F.3d 1324, 1333-34 (11th Cir. 2018). The undeniable answer here is that Ms. Vickaryous's speech at the private function was <u>not</u> part of her job duties or made in her capacity as an employee – they were made as a private citizen. *Lane,* 573 U.S. at 238 (statement made "by a public employee outside the scope of his ordinary job duties is speech as a citizen for First Amendment purposes.").

The next inquiry turns on whether the speech at issue is on a matter of public concern. As the Supreme Court held:

> Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.

*Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (citations and internal quotation marks omitted). Ms. Vickaryous's speech at a private event on her on personal time regarding the Defendant not ensuring student and school safety by not providing school resource officers is certainly a matter of concern for the community. *See Cook v. Gwinnett Cty. Sch. Dist.*, 414 F.3d 1313, 1319 (11th Cir. 2005) ("In various contexts, we have made it clear that speech relating to the safety of the public involves a matter of public concern" and holding that a bus driver's concerns about "the safety of children due to bus overcrowding and the lack of time allotted for pre-trip bus inspections" were not merely "internal bus driver employment issues"); *see also Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 917 n.25 (11th Cir. 1993) ("Some issues may be obviously of public concern from their subject matter, for instance, an alleged health or safety risk."); *see also Fikes v. City of Daphne*, 79 F.3d 1079, 1084 (11th Cir. 1996) ("Certainly, the question of whether police officers are properly performing their duties, as a public safety issue, must be considered an issue of political or social concern."); *Weinstein v. City of N. Bay Village*, 977 F. Supp. 2d 1271, 1284-85 (S.D. Fla. 2013). And thus, Ms. Vickaryous has shown that her speech implicated a matter of public concern.[5]

---

[5] Additionally, "[t]he forum in which a petition is lodged will be relevant to the determination of whether the petition relates to a matter of public concern." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 398, 131 S. Ct. 2488, 2500 (2011). As discussed above, the speech at issue was made at a private function – not on school grounds and not on school time.

> i. **The Defendant's Interest In Silencing Ms. Vickaryous Does Not Outweigh Plaintiff's First Amendment Rights.**

Where a government employee has spoken on a matter of public concern, courts are to then consult a balancing test to determine whether the First Amendment affords protection. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568-69 (1968). "[T]he interests of the government employee, as a citizen, in commenting upon matters of public concern must be balanced with the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Boyce,* 510 F.3d at 1343 (internal quotation marks omitted) (*quoting Pickering,* 391 U.S. at 568). The Eleventh Circuit has instructed that "[i]n striking this balance, we consider these factors: '(1) whether the speech at issue impedes the government's ability to perform its duties efficiently, (2) the manner, time, and place of the speech, and (3) the context within which the speech was made.'" *Stanley v. City of Dalton,* 219 F.3d 1280, 1289 (11th Cir. 2000) (*quoting Bryson,* 888 F.2d at 1567).

Eleventh Circuit case law also considers the absence of any disruption as probative in a *Pickering* analysis. *See Tindal v. Montgomery County Comm'n,* 32 F.3d 1535, 1540 (11th Cir. 1994) ("As observed above, Tindal clearly had an interest in her speech describing the discrimination present in the Sheriff's office. The state interest half of the balance, however, is empty: Butler has proffered no evidence indicating that Tindal's speech inhibited either her work or the work of the office."); *Berdin v. Duggan,* 701 F.2d 909, 912 (11th Cir. 1983) ("Further, there was no evidence that Berdin's speech resulted in an internal discipline problem or disharmony among co-workers.").

Here, Ms. Vickaryous made her remarks at a private event on her on personal time (while on administrative leave) regarding the Defendant not ensuring student and school safety by not providing school resource officers, and the Defendant cannot identify a single reported disruption

17

in the performance of its educational mission. The Defendant, therefore, cannot plausibly rest the decision to terminate Ms. Vickaryous on a "possibility of disruption" — months had passed without any disruption occurring by the time Defendant actually terminated Ms. Vickaryous.

Finally, in striking the balance, the Eleventh Circuit requires that a court consider the manner, time, and place of the speech, as well as the context within which the speech was made. As noted *supra*, Ms. Vickaryous made her remarks as a citizen (not an employee) addressing a matter of public concern – student and school safety due to a lack of school resource officers – and she did so at a private event, on her own time, and not as an employee of the Defendant. The Defendant's side of the *Pickering* balance is empty. Nothing Ms. Vickaryous did remotely suggests that her speech impacted the discipline, mutual respect, trust and particular efficiency of the school. The Defendant's side of the *Pickering* balance is empty.

> ii. **Plaintiff's Comments at a Private Function Regarding School Safety and the Lack of School Resource Officers Was a Motivating Factor In Defendant's Adverse Action.**

The final stage of the inquiry is whether Ms. Vickaryous's speech was a "motivating factor." *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977); *see also Vila v. Padron,* 484 F.3d 1334, 1339 (11th Cir. 2007) (requiring that protected speech play "a substantial or motivating role in the adverse employment action"). This final prong is easily met as Ms. Wenrich herself confirmed that a "substantial motivating factor" in the Defendant's decision to terminate Ms. Vickaryous was Ms. Vickaryous's remarks discussed above. This is further reflected in the discipline meted out to her that specifically referenced her remarks at a private event on her on personal time (while on administrative leave) regarding the Defendant not ensuring student and school safety by not providing school resource officers.

In sum, Ms. Vickaryous made remarks at a private event on her on personal time (while on

administrative leave) regarding the Defendant not ensuring student and school safety by not providing school resource officers, which meets the burden of showing she spoke as a citizen on a matter of public concern. Moreover, and particularly because the speech at issue was made at a private event on Ms. Vickaryous's on personal time (while on administrative leave) the Defendant's side of the balancing of interests test is zero. And finally, the Defendant has admitted that Ms. Vickaryous's speech was a motivating factor. As a result of the foregoing, the Defendant has undeniably violated Ms. Vickaryous's First Amendment rights and summary judgment on this issue is proper.

## CONCLUSION

WHEREFORE the Plaintiff respectfully requests the Court GRANT the instant Motion in Plaintiff's favor and award all other relief deemed just.

Respectfully submitted,

Dated: January 22, 2020

**s/ Benjamin H. Yormak**
Benjamin H. Yormak
Florida Bar Number 71272
Trial Counsel for Plaintiff
Yormak Employment & Disability Law
9990 Coconut Road
Bonita Springs, Florida 34135
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: None.

**s/ Benjamin H. Yormak**
Benjamin H. Yormak